UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

Case No.: **12-CV-02064 (AKH)**

STEVEN MERCIER,

                     Plaintiff,

     - against -

CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS and
MARK LAVORGNA, *Individually,* and
MICHELE MCKITRICK, *Individually,*

                  Defendants.

------------------------------------------------------------------------X

**AMENDED
COMPLAINT**

**TRIAL BY JURY**

1.    Plaintiff, STEVEN MERCIER (hereinafter referred to as "MERCIER"), by and through his undersigned attorneys, files this Federal Complaint, against Defendants, CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, MARK LAVORGNA, *Individually* and MICHELE MCKITRICK, *Individually* (hereinafter referred to as "Defendants").

**INTRODUCTION**

2.    Plaintiff MERCIER brings this action charging that the Defendants violated his rights under the Family Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA"); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"); and the New York City Human Rights Law, Administrative Code § 8-107 et seq. (the "NYCHRL"); seeking to recover lost wages, and additional amounts as liquidated damages, emotional distress, punitive damages, reasonable attorney's fees and costs, as a result of being discriminated against on the basis of an actual and/or perceived disability and retaliated against him due to his actual and/or perceived disability and the medical commitments that accompanied these disabilities.

## JURISDICTION AND VENUE

3.  Jurisdiction of this action is conferred upon the Court as this action involves a Federal Question under the FMLA and the ADA.  The Court also has jurisdiction pursuant to 42 U.S.C. §12101 *et. seq.*; 29 U.S.C. §2617; 28 U.S.C. §1331, §1343.  The Court has supplemental jurisdiction over Plaintiff's NYCHRL claims pursuant to 28 U.S.C. § 1367 as such claims are derived from a common nucleus of operative facts.

4.  Venue is proper in this district based upon Defendant CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS' (hereinafter "VERIZON") residency within the County of New York, State of New York, within the Southern District of New York. 28 U.S.C. §1391.

5.  This case is governed under the laws of New York State and New York City as the Plaintiff **worked** in New York, New York tending to Defendants business needs.

## PROCEDURAL PREREQUISITES

6.  Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

7.  Plaintiff received a Notice of Right to Sue from the EEOC, dated June 30, 2012, with respect to the herein charges of discrimination.  A copy of the Notice is annexed hereto.

8.  This Action is being commenced within 90 days of receipt of said Right to Sue.

## PARTIES

9.  At all times material, Plaintiff MERCIER was and continues to be an individual who resides in the State of New Jersey, County of Bergen.

10.    At all times material, Defendant VERIZON was and is a global broadband and telecommunications foreign business corporation duly existing pursuant to and by virtue of the laws of the State of Delaware

11.    At all times material, Defendant VERIZON conducted business in the State of New York.

12.    At all times material, Defendant VERIZON generated and received substantial revenue from the State of New York.

13.    At all times material, Defendant VERIZON owned and operated an office located at 915 Broadway, 8th Floor, New York, New York 10010, wherein the discriminatory conduct took place.

14.    At all times material, Defendant MICHELE MCKITRICK (hereinafter referred to as "MCKITRICK") was and is an individual residing in the State of New York.

15.    That at all times relevant hereto, Defendant MCKITRICK was and is an employee of Defendant VERIZON.

16.    That at all times relevant hereto, Defendant MCKITRICK was and is a "Business Sales Manager" for Defendant VERIZON.

17.    That at all times relevant hereto, Defendant MCKITRICK was Plaintiff MERCIER's supervisor and/or held supervisory authority over Plaintiff MERCIER.

18.    At all times material, Defendant MARK LAVORGNA (hereinafter referred to as "LAVORGNIA") was and is an individual residing in the State of New York.

19.    That at all times relevant hereto, Defendant LAVORGNA was and is an employee of Defendant VERIZON.

20.    That at all times relevant hereto, Defendant LAVORGNA was and is an "Associate Director" for Defendant VERIZON.

21.    That at all times relevant hereto, Defendant LAVORGNA was Plaintiff MERCIER's supervisor and/or held supervisory authority over Plaintiff MERCIER.

22.    That at all times relevant hereto, Plaintiff MERCIER was a "Business Account Executive" for Defendant VERIZON at 915 Broadway, 8th Floor, New York, New York 10010.

23.    By information and belief, Defendant VERIZON employs 15 or more employees as required by the ADA.

24.    By information and belief, Defendant VERIZON employs 50 or more employees within 75 miles.

25.    Regardless of whether Defendant VERIZON employs 50 or more employees within 75 miles, Defendants are "joint employers" and/or "integrated employers" for purposes of FMLA coverage.

26.    Plaintiff MERCIER is an "eligible" employee who was employed by Defendant VERIZON for more than 12 months and has most certainly worked more than 1,250 hours.

27.    At all times material, Defendant MCKITRICK and Defendant LAVORGNA acted, directly or indirectly, in the interest and on behalf of Defendant VERIZON in relation to Plaintiff MERCIER.

28.    At all times material, Defendant VERIZON participated directly in the conduct giving rise to the Plaintiff's claims herein.

## MATERIAL FACTS

29.    In or about December 2004, Plaintiff MERCIER began his employment with Defendant VERIZON.

4

30.   On or about December 26, 2009, Plaintiff MERCIER transferred and began working for Defendant VERIZON in their "Business Account Department" at their 915 Broadway, 8th Floor, New York, New York 10010 location. Plaintiff MERCIER was later promoted to the position of "Business Account Executive."

31.   During his employment as a "Business Account Executive" with Defendant VERIZON, Plaintiff MERCIER earned approximately $52,000 per year, along with commission.

32.   At all times relevant hereto, Plaintiff MERCIER was an exemplary employee during the approximately 6 years he was employed with Defendant VERIZON.

33.   Plaintiff MERCIER is not a member of a union.

34.   At all times relevant hereto, throughout his tenure with Defendant VERIZON, Plaintiff MERCIER always received compliments for his work performance and got along well with all of his co-workers. Specifically, Plaintiff MERCIER was the recipient of the highly coveted Winner's Circle for 2006-2008 for being in the top 15% in sales, and in 2009, he was the proud recipient of the "President's Cabinet" for placing in the top 1% as a sale representative during his tenure with Defendant VERIZON.

## MATERIAL FACTS REGARDING VIOLATIONS OF THE FMLA

35.   On November 30, 2010, Plaintiff MERCIER underwent knee surgery and unfortunately developed blood clots in his lungs as a result. Thereafter, Plaintiff MERCIER was hospitalized for pulmonary embolism and was placed on blood thinners to treat this condition. Plaintiff utilized his vacation leave in order to have the surgery.

36.   On or about December 8, 2010, Plaintiff MERCIER commenced his authorized FMLA leave.

37.   While on authorized FMLA leave, Plaintiff MERCIER was contacted by Defendant

VERIZON's legal department to testify in a sexual harassment suit filed by Janine Ascencao against Defendant VERIZON, interfering with Plaintiff's FMLA leave.

38. During Plaintiff MERCIER's FMLA leave and pursuant to Defendants request, Plaintiff testified at the Federal Justice Department in New Jersey on that matter.

39. On or about March 5, 2011 Plaintiff MERCIER returned to work from his authorized FMLA leave.

## MATERIAL FACTS REGARDING DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF THE ADA AND NYCHRL

40. Upon his return, on or about March 5, 2011, Plaintiff MERCIER immediately informed Defendants of his disabilities and requested reasonable accommodations. Specifically, Plaintiff requested to arrive to work late once per week so that he may attend doctor appointments. Additionally, Plaintiff requested that he work out in the field once or twice a week instead of four times weekly, which was normal prior to Plaintiff's FMLA leave.

41. **On or about March 5, 2011, immediately upon Plaintiff MERCIER's return to his position as "Business Account Executive" with Defendant VERIZON, he began to experience differential treatment; discriminatory treatment; harassment; and was retaliated against by Defendants due to Plaintiff's authorized FMLA leave and disabilities.**

42. **On or about March 5, 2011, Plaintiff MERCIER's first day back to work with Defendant VERIZON following his FMLA leave, Plaintiff's monthly quota was raised to 85 new contracts and 115 renewals from his original quota of 75 new**

**contracts.**

43. On or about June 2011, Defendant MCKITRICK issued Plaintiff MERCIER a verbal warning in the presence of Rupert Jones and Elias Bello, fellow co-workers of Plaintiff MERCIER due to Plaintiff's inability to meet his monthly quota requirements following his FMLA leave of absence, and disabilities.

44. On or about June 2011, Plaintiff MERCIER requested a reasonable accommodation and requested that Defendants reduce his quota (similar to the "ramp up" grace period discussed *infra*) due to his inability to work on the field four (4) times a week because of his disabilities. Defendants ignored Plaintiff's request for reasonable accommodations.

45. Upon information and belief, generally, when a new employee commences employment with Defendant VERIZON, they are given a 6 month grace period of "ramp up" in order to ensure that they meet the required 80% total in a 3 month rolling basis.

46. Upon information and belief, the accounts that Plaintiff MERCIER had personally acquired, prior to his leave, were re-assigned to other representatives during his medical leave of absence. When Plaintiff MERCIER returned, those accounts should have been returned to Plaintiff MERCIER. When Plaintiff MERCIER inquired as to why Defendant MCKITRICK transferred his zip codes to other representatives, she responded that other representatives possessed "better personalities" who would be better equipped to diffuse issues at these locations. Upon information and belief, Plaintiff MERCIER had always successfully managed the transferred accounts without issue in the past.

47. Upon information and belief, Defendant MCKITRICK's transfer of Plaintiff MERCIER's accounts from his assigned zip codes was a tactical and premeditated means of discriminating against Plaintiff MERCIER and was in violation of the rules of

engagement at Defendant VERIZON with respect to all account executives possessing the same and equal opportunities to succeed in relation to their peers.

48.   Furthermore, following the above permanent transfer and reassignment of his accounts to other account representatives, in particular Monica Wust, Plaintiff MERCIER drafted a formal complaint to Defendant LAVORGNA via email regarding this transfer and reassignment.

49.   Defendants then retaliated against Plaintiff MERCIER for his formal complaints to Defendant LAVORGNA regarding the transfer and reassignment of his accounts to other account representatives.

50.   In addition, on July 2011, a written warning was issued by Defendant MCKITRICK to Plaintiff MERCIER regarding his failure to meet his monthly quota requirements.

51.   On or around August of 2011, Defendant MCKITRICK transferred Monica Wust's "US Concepts Account" that was previously held under Monica Wust's zip code to Plaintiff MERCIER. This account was an underperforming account and would not produce at the level of Plaintiff's other accounts. Upon information and belief, this transfer served as a pre-text to allow Defendants to disguise the discrimination that Defendants subjected Plaintiff MERCIER to,    based on his disability and for his participation at the aforementioned sexual harassment proceeding.

52.   In addition, Defendants' had already permanently transferred Plaintiff MERCIER's higher performing accounts to other representatives of Defendant VERIZON, specifically, Monique Wust. This placed Plaintiff MERCIER at a significant disadvantage and jeopardized his ability to meet his monthly quota; thus jeopardizing his commission rates and overall employment status. Defendants used this opportunity to set

8

Plaintiff MERCIER up to fail. The transfer of these well performing accounts to other non-disabled employees who had not participated in the sexual harassment proceeding was pre-textual. Simply, Defendants' conduct was discriminatory retaliatory and/or was used to unlawfully terminate Plaintiff MERCIER because of his disability and testimony at the aforementioned sexual harassment proceeding.

53.    Additionally, on or around November 28, 2011, Defendant MCKITRICK and Defendant LAVORGNA advised Plaintiff MERCIER to look for other positions within Defendant VERIZON given that his file was being reviewed for a possible termination. Following this conversation, Plaintiff MERCIER became increasingly anxious and depressed and spent the entire weekend looking for other positions within Defendant VERIZON's company. The only positions that were available to him were geographically unreasonable, impractical there were vacant positions for which Plaintiff MERCIER was overqualified; and/or there were vacant positions for which he would have to sustain a significant decrease is salary.

54.    Thereafter, in or about December, 2011, Plaintiff MERCIER was verbally terminated by Defendant LAVORGNA and Defendant MCKITRICK. Furthermore, both Defendants stated that Defendant VERIZON's Human Resources Department reviewed his employment status and decided to terminate Plaintiff MERCIER for his alleged failure to meet his monthly quota since March of 2011, the period in which Plaintiff MERCIER returned from his disability leave and had asked for an accomodation.

55.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future

pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

56.    As a result of the above Plaintiff has been damaged in an amount which exceeds the jurisdictional limits.

57.    As Defendants conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, the Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION FOR INTERFERENCE & RETALIATION UNDER THE FAMILY AND MEDICAL LEAVE ACT

58.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

59.    Section 2615 of the Family Medical Leave Act, states in pertinent part:

"(a) Interference with rights

(1) Exercise of rights
It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

(2) Discrimination
It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

60.    Defendants interfered with Plaintiff's rights under the above section discriminated against Plaintiff and discharged Plaintiff from his employment for opposing Defendants unlawful employment practice and for exercising her rights.

61.     As such Plaintiff has been damaged as set forth herein.


## AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER AMERICANS WITH DISABILITIES ACT ONLY AS AGAINST Defendant VERIZON

62.     Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

63.     Plaintiff claims Defendants violated Titles I and V of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

64.     Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states:

> "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

65.     Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his disability and/or her perceived disability.

66.     As such Plaintiff has been damaged as set forth herein.


## AS A THIRD CAUSE OF ACTION UNDER THE ADA ONLY AS AGAINST DEFENDANT VERIZON RETALIATION

5.     Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

6.     Sec. 12203. Prohibition against retaliation and coercion provides as follows:

(a) Retaliation

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

7.  Defendants violated Plaintiff's above rights as set forth herein.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

67. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

68. New York City Human Rights Law, Administrative Code § 8-107 [1] provides that

> "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

69. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of his actual and/or perceived disability.

70. As such Plaintiff has been damaged as set forth herein.

## AS A FIFTH CAUSE OF ACTION OF DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

71.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above
paragraphs of this Complaint as if more fully set forth herein at length.

72.    New York City Human Rights Law, Administrative Code §8-107(6) provides that:

"Aiding and abetting. It shall be an unlawful discriminatory practice for any person to
aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this
chapter, or to attempt to do so."

73.    Defendants violated the section cited herein as set forth.

74.    As such Plaintiff has been damaged as set forth herein.


### AS A SIXTH CAUSE OF ACTION OF DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

75.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above
paragraphs of this Complaint as if more fully set forth herein at length.

76.    New York City Human Rights Law, Administrative Code §8-107(19) provides that:

"Interference with protected rights. It shall be an unlawful discriminatory practice for
any person to coerce, intimidate, threaten or interfere with, or attempt to coerce,
intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or
on account of his or his having aided or encouraged any other person in the exercise
or enjoyment of, any right granted or protected pursuant to this section."

77.    Defendants violated the section cited herein as set forth.

78.    As such Plaintiff has been damaged as set forth herein.


### AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

79.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

80.     New York City Human Rights Law, Administrative Code §8-107(13) provides that:

"Employer liability for discriminatory conduct by employee, agent or independent contractor.

a.  An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

b.  An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

(1) the employee or agent exercised managerial or supervisory responsibility;                                                               or

(2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility;                                                               or

(3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."

14

81.     Defendants violated the section cited herein as set forth.

82.     As such Plaintiff has been damaged as set forth herein.


## AS A EIGHTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

85.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

86.     The New York City Administrative Code Title 8, §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

87.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.


## JURY DEMAND

Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in unlawful employment practice prohibited by the FMLA, ADA, and NYCHRL by engaging in discriminatory conduct; retaliating against Plaintiff; and unlawfully terminating Plaintiff.

B. Declaring that the Defendants intentionally caused Plaintiff to become emotionally distressed.

15

C. Awarding damages to the Plaintiff, retroactive to the date of his discharge, for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendants unlawful termination of employment and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practice;

D. Awarding Plaintiff compensatory damages for mental, emotional injury, distress, pain and suffering and injury to reputation;

E. Awarding Plaintiff punitive damages;

F. Awarding reinstatement of Plaintiff to the same position held before the retaliatory personnel action, or to an equivalent position.

G. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

H. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants unlawful employment practices.

**WHEREFORE**, Plaintiff demands judgment against Defendants, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: New York, New York
          July 16, 2012

**PHILLIPS & PHILLIPS**
**ATTORNEYS AT LAW, PLLC**

Marjorie Mesidor (MM1978)
30 Broad Street, 35th Floor
New York, NY 10004
mmesidor@tpglaws.com
(212) 248-7431

16

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X

STEVEN MERCIER,

                        Plaintiff,

    - against -

CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS and
MARK LAVORGNA, *Individually,* and
MICHELE MCKITRICK, *Individually,*

                        Defendants.

-----------------------------------------------------------------------X

Case No.: **12-CV-02064 (AKH)**

**AMENDED**
**COMPLAINT**

**TRIAL BY JURY**

---

**AMENDED COMPLAINT**

---



**ATTORNEYS AT LAW**
**30 BROAD STREET, 35TH FLOOR, NEW YORK, NY 10004**